UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-cr-300(1)-SRN-KMM |
| Plaintiff, | |
| v. | REPORT & RECOMMENDATION |
| Tevin Jay Maurstad, | |
| Defendant. | |

Defendant Tevin Jay Maurstad filed a motion to suppress evidence obtained during the execution of two traffic stops. (ECF No. 43.) For the reasons discussed below, the Court recommends that Mr. Maurstad's motion be DENIED.

## I.   Factual Background

Mr. Maurstad challenges the legality of two traffic stops, which were explored at a May 7th evidentiary hearing. Morrison County Sheriff's Deputy Casey King testified about the August 4, 2016 stop and search, and Carlton County Sheriff's Deputy Tory Cawcutt testified about the events of January 29, 2018.

### A.   August 2016 Traffic Stop

On August 4, 2016 around 7:00 p.m., while observing northbound traffic on Highway 10 in Morrison County, Minnesota, Deputy King saw an SUV with darkly tinted windows traveling north. (Hearing Transcript 11–12.) Believing that the tinting on the windows violated Minnesota Statutes section 169.71 for being too dark, Deputy King initiated a traffic stop. (*Id.* at 13–14.) Deputy King approached the car, driven by Mr. Maurstad, and asked for his license. He then learned that neither Mr. Maurstad nor his passenger had valid driver's licenses. (*Id.* at 14.) At that point, the deputy noticed the smell of burnt marijuana coming from inside the car. (*Id.* at 15.)

Deputy King asked Mr. Maurstad to exit the vehicle. As he did so, the deputy noticed the odor of marijuana on Mr. Maurstad. (*Id.* at 15–16.) Deputy King confronted Mr. Maurstad with this information, who told the deputy that he had smoked marijuana approximately 20 minutes before the traffic stop and that there was marijuana in the car. (*Id.* at 16–17.) Deputy King then asked Mr. Maurstad and his passenger to step out of the car so he could search them and the vehicle. Although he found nothing on the person of Mr. Maurstad or his passenger, Deputy King discovered marijuana on the floorboard and in the glove box of the vehicle. (*Id.* at 18–19.)

Deputy King then expanded his search to the rest of the vehicle, including the engine compartment. There, he discovered a white t-shirt between the battery compartment and the driver's side fender wall, which was hiding a .45 caliber pistol. (*Id.* at 19.) Mr. Maurstad and his passenger were then placed under arrest. (*Id.* at 20–21.) Deputy King continued his search of the engine compartment and discovered a hollow area between the front cab and the engine clock. Within this void, he found a box and a bag labelled "cookies." (*Id.* at 21.) The bag did not contain cookies, but rather three containers of methamphetamine. (*Id.*)

### B. January 2018 Traffic Stop

Mr. Maurstad was also involved in a traffic stop on January 29, 2018. Carlton County Sheriff's Deputy Torrance Cawcutt was monitoring northbound traffic on Interstate 35 in Carlton County at approximately 1:30 a.m. when he saw a black Chrysler 300 driving northbound without a front or rear license plate. (Tr. at 35–36.) Deputy Cawcutt followed the Chrysler, which exited the interstate onto Highway 73 towards Moose Lake. (*Id.* at 36.) While following the vehicle, the radar in Deputy Cawcutt's vehicle indicated that the Chrysler was traveling at 37 MPH in a 30 MPH zone. (*Id.* at 37.) Both vehicles passed by a roadside speedometer, which also showed the Chrysler going 37 MPH. (*Id.*) Deputy Cawcutt activated his emergency lights and initiated a traffic stop. (*Id.* at 37–38.) The car did not stop immediately, but instead the driver turned on his emergency flashers and travelled for approximately a quarter mile before pulling into a gas station parking lot. (*Id.* at 38.)

Mr. Maurstad was again driving the vehicle and this time had a juvenile passenger with him. When Deputy Cawcutt first made contact with Mr. Maurstad and his passenger, he noticed that the young passenger was shaking uncontrollably

with a blank expression on his face. (*Id.* at 39.) Mr. Maurstad again had no driver's license, but instead provided Deputy Cawcutt with a Minnesota identification card and advised that he was traveling to the Cass Lake area. (*Id.* at 40–42.) Deputy Cawcutt testified that this interaction reminded him of a briefing he had received before starting his shift earlier that night regarding a black Chrysler 200 or 300 that would be traveling to Bemidji or Deer River with a "load of dope."[1] (*Id.* at 43.)

Deputy Cawcutt asked Mr. Maurstad to exit the vehicle and accompany him back to his squad car. Mr. Maurstad complied. When the deputy asked him if he had any weapons on his person, he said that he did not, and then began voluntarily and without prompting removing items from his pockets. (*Id.* at 43.) Deputy Cawcutt asked Mr. Maurstad for consent to pat him down for weapons, which he gave. (*Id.* at 44.) While conducting the pat-down, Deputy Cawcutt felt a hard object in the front of his jeans pocket. (*Id.*) Mr. Maurstad told the deputy it was a cigarette. Believing that it could be a weapon, Deputy Cawcutt removed the item and found a small baggy of pills, which were stacked flat and on top of one another so that he believed it was a solid, hard object during the pat-down. (*Id.*) Mr. Maurstad informed the deputy that the pills were Percocet and that he did not have a prescription. (*Id.* at 45.) Deputy Cawcutt detained Mr. Maurstad for fifth degree possession. (*Id.* at 45–46.)

Deputy Cawcutt and another officer on the scene began to search Mr. Maurstad's vehicle. During the search, Deputy Cawcutt noticed broken molding and trim throughout the vehicle, and screws used to secure the molding laying on the floor. (*Id.* at 48.) Though he did not find any contraband during his first search, he believed that the car might be concealing drugs behind the panels. (*Id.*) Deputy Cawcutt, a K-9 handler, deployed his dog Roman to search the vehicle. (*Id.*) However, Roman did not indicate the presence of drugs during the sniff. (*Id.* at 49.) Deputy Cawcutt then noticed that the driver's side door molding was bulging and looked to have been tampered with. (*Id.*) He pried the molding away from the door frame and found a package wrapped in clear plastic. (*Id.* at 50.) The deputy removed the plastic wrapping and discovered a bag with a hard crystal-like substance that later tested positive as methamphetamine. (*Id.* at 50–51.) He seized the package, three cell phones, and $721 from Mr. Maurstad, who was arrested. (*Id.* at 51.)

---

[1] Cass Lake is a city located between Deer River and Bemidji.

## II.   Analysis

Mr. Maurstad argues that neither traffic stop was supported by reasonable suspicion of criminal activity, and therefore all the evidence seized during these encounters must be suppressed. For the reasons discussed below, the Court disagrees.

### A.   Legal Standard

Two exceptions to the Fourth Amendment's warrant requirement are implicated by the searches at issue: the Terry stop and the vehicle exception. "It is well-settled under *Terry* that an investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion that the person stopped is involved in criminal activity." *United States v. Arnold*, 835 F.3d 833, 838 (8th Cir. 2016) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). A Terry stop is valid if an officer can point to "specific and articulable facts" and rational inferences drawn from those facts to support his reasonable suspicion. *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (citing *Terry*, 392 U.S. at 21.) The Court must look at the totality of the circumstances to determine whether a Terry stop was justified. *Id.*

A law enforcement officer may conduct a warrantless search of an automobile if the officer has probable cause to justify the search or obtains voluntary consent to the search. *United States v. Murillo-Salgado*, 854 F.3d 407, 417 (8th Cir. 2017). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Id.* at 418 (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). This probable cause extends to the entirety of a lawfully stopped vehicle and its contents. *Id.* (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).

### B.   August 2016 Stop

Mr. Maurstad challenges the August 2016 traffic stop on the ground that it was pretextual and unsupported by reasonable suspicion. Specifically, he argues that Deputy King should have known that the tinted windows were legal, and that his mistake of fact was unreasonable. The Court disagrees.

### 1. Reasonable Suspicion to Stop

Deputy King had reasonable suspicion to support a traffic stop of Maurstad's car. He testified that Mr. Maurstad's windows appeared to be impermissibly tinted. (Tr. 26.) And in fact, the windows on his vehicle *were* darker than permitted under Minnesota law. Order Regarding Def. Contested Omnibus Motion, *State v. Maurstad*, No. 49-cr-16-1110 at 5 (Minn. Dist. Ct. Feb. 10, 2017). Nonetheless, Mr. Maurstad argues that Deputy King's decision to initiate a traffic stop based on the tint of the windows was improper because he made an unreasonable mistake—the windows, while too dark, were legal because manufactured windows are exempt from Minn. Stat. 169.71. But law enforcement officers may make the "mistakes…of reasonable men." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Perfection is not required; instead, courts must ask if the mistake was objectively reasonable. *See Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014); *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (noting that a police officer is "justified in making the stop if he objectively had a reasonable basis for believing that the driver has breached a traffic law." (internal quotation marks omitted)).

Here, the Court finds that Deputy King's mistake was reasonable. Indeed, other courts, including this one, have found that an officer's mistaken belief that a window tint was too dark is reasonable. *United States v. Travis*, No.14-cr-253 (DSD/SER), 2015 WL 439393 at *11 (D. Minn. Feb. 3, 2015) (finding a traffic stop was permissible even though it was based on an officer's reasonable mistake regarding the window tint of a vehicle); *see also United States v. Dominguez*, No. CR 118-021, 2018 WL 4762897 at *3–4 (S.D. Ga. Sept. 14, 2018) (same), *report and recommendation adopted*, 2018 WL 4762126 (S.D. Ga. Oct. 2, 2018); *United States v. Ushery*, 526 F. Supp. 2d 497, 501 (M.D. Penn. 2007) ("A reasonable belief that window tint violates traffic regulations will justify a stop regardless of whether a window tint violation is ultimately found to exist…."). It is true that windows with tint from the manufacturer have a marking on them designating them as such. (Tr. 23.) But Deputy King testified that he could not have seen these markings as the vehicle drove past him at 60 miles per hour. (*Id.*) Indeed, common sense tells the Court that it is not possible to perform such a close inspection of a moving vehicle. Therefore, the only way

Deputy King could have confirmed that the window tint was subject to the manufacturer exception was to initiate a traffic stop.[2]

Moreover, even if Deputy King had immediately checked for the markings once the car was stopped, he would still have been permitted by the Fourth Amendment to interact with Mr. Maurstad and his passenger by requesting his driver's license. *See, e.g.*, *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008) (noting that an officer may check a driver's license and registration during a lawful traffic stop, even if that traffic stop is based on a mistake). Deputy King testified that he noticed the odor of burnt marijuana "within seconds" of interacting with Mr. Maurstad (Tr. 27), and the Court finds his testimony credible on this point. Indeed, the deputy can be clearly heard on the recording of the traffic stop noting the smell of burnt marijuana soon after first interacting with Mr. Maurstad and his passenger. (Govt. Ex. 1 at 19:15.) He asked Mr. Maurstad to step out of the car and sit in his patrol car, where Mr. Maurstad admitted to Deputy King that he had smoked marijuana approximately twenty minutes prior to the stop. (Tr. 16.) Mr. Maurstad also admitted that he had marijuana in his car. (Tr. 17.) If, during a routine traffic stop, the officer's suspicions regarding other unlawful activity are raised, they may expand the scope of the investigation. *Payne*, 534 F.3d at 951. Deputy King did so here.

Although a challenge to the warrantless searches Deputy King performed after the marijuana discovery is not before it, the Court notes that the odor of burnt marijuana, particularly when combined with Mr. Maurstad's admissions, gave Deputy King probable cause to search the entire vehicle under the automobile exception. *See, e.g.*, *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (determining that officers had probable cause to search an entire vehicle after smelling the odor of burnt marijuana emanating from the vehicle and the driver's admission that he had been smoking it prior to the traffic stop). Because the Court determines that the traffic

---

[2] The fact that Deputy King was not aware of the exception does not vitiate his original justification for the stop. *Dominguez*, 2018 WL 4762897 at *6 (rejecting a challenge to a traffic stop based on window tint darkness, despite the fact that the officer was unaware of an applicable exception to the law); *cf. United States v. Hall*, 270 Fed. Appx. 123, 126 (3d Cir. 2008) (finding a traffic stop was supported by reasonable suspicion even though officer was unable to determine at the time of the stop whether the vehicle's windows met the manufacturer exception).

6

stop that led to the search of the vehicle was valid, the Court recommends that Mr. Maurstad's motion to suppress evidence obtained as a result of that search be denied.

### C.     January 2018 Stop

Mr. Maurstad next challenges the evidence obtained as a result of the January 2018 traffic stop and subsequent searches. Specifically, he argues that Deputy Cawcutt did not have reasonable suspicion to stop him.[3] Ultimately, the Court determines that the traffic stop and subsequent searches were valid, and recommends that Mr. Maurstad's motion be denied.

#### 1.     Reasonable Suspicion to Stop

First, the Court finds that the January 2018 traffic stop was permissible under the Fourth Amendment. While following Mr. Maurstad for a suspected license plate violation,[4] Deputy Cawcutt observed him speeding, traveling 37 miles per hour in a 30 miles per hour zone. (Tr. 37.) He verified Mr. Maurstad's speed with two separate methods. First, Deputy Cawcutt's in-car Stalker radar indicated that Mr. Maurstad's speed was 37 miles per hour. (*Id.*) Second, both vehicles passed a digital roadside sign that indicated that the vehicles were traveling at 37 miles per hour. (*Id.*) Mr. Maurstad argues that because there is no testimony to suggest that either speed detector was recently calibrated, the Court should not accept Deputy Cawcutt's reason for initiating a traffic stop. The Court disagrees.

Mr. Maurstad has provided no evidence to suggest that either radar was malfunctioning. He argues that he was only traveling at an average of 18 miles per hour when Deputy Cawcutt initiated the traffic stop—a number he arrives at by

---

[3] It is unclear from the briefing if Mr. Maurstad challenges the search of his person because he does not devote argument to this topic, but the Court will nonetheless address its legality.

[4] Although Deputy Cawcutt originally believed that the vehicle Mr. Maurstad was driving had no front or rear license plates, he discovered upon initiating the traffic stop that the car actually had a 21-day temporary registration sticker in the back of the window. (Tr. 56.) Mr. Maurstad argues that this discovery should have ended the traffic stop. However, this was not the only reason for initiating the traffic stop—Deputy Cawcutt also observed Mr. Maurstad speeding. Furthermore, as discussed above, a traffic stop based on a reasonable mistake (in this case, the inability to see a temporary license sticker in the dark) is not invalid.

"doing basic math." Mr. Maurstad calculates his speed of travel by using the deputy's testimony that he traveled approximately a quarter of a mile in 50 seconds.[5] (Tr. 58–59.) However, this logic is flawed. First, this calculation assumes that Mr. Maurstad's speed was constant, but of course it was not. Mr. Maurstad necessarily decelerated to turn into the gas station and stop his vehicle. And it is likely that during the time Mr. Maurstad drove with his blinkers on in response to a police car pulling him over, he drove more slowly than prior to seeing the officer. The math Mr. Maurstad proffers does not take these facts into account, and therefore tells us nothing about what speed the vehicle was traveling at any given point during the 50 seconds. Second, the 50 seconds between when Deputy Cawcutt activated his sirens and when Mr. Maurstad pulled into the gas station occurred *after* the traffic violation had already happened. Deputy Cawcutt had already observed Mr. Maurstad traveling at 37 miles per hour before activating his sirens. (Tr. 38.) Therefore, even if Mr. Maurstad had been traveling at a constant 18 miles per hour once the stop was underway, that would not negate the fact that prior to that time, he had been traveling at 37 miles per hour in a 30 miles per hour speed zone.

Finally, crediting the concern that both radars may have been improperly calibrated and showed inaccurate readings of Mr. Maurstad's speed, Deputy Cawcutt would still be justified in initiating his traffic stop because the Court finds that relying on two independent radars to conclude a car is speeding is reasonable. Accordingly, the traffic stop based on speeding was valid. *See, e.g.*, *Sanders*, 196 F.3d at 913 (8th Cir. 1999) ("[An officer is] justified in making the stop if he objectively had a reasonable basis for believing that the driver has breached a traffic law." (internal quotation marks omitted)).

### 2. Searches of Mr. Maurstad and His Vehicle

The Court next considers the events that occurred after Mr. Maurstad's vehicle was stopped. Deputy Cawcutt searched both Mr. Maurstad's person and, in several stages, his vehicle. The Court finds that these searches did not violate the Fourth Amendment.

---

[5] Specifically, $\frac{.25\ miles}{50\ seconds} = \frac{x\ miles}{3600\ seconds}$. Solving for x results in 18, which when added back to the original equation provides us with 18 miles per 3600 seconds, or 1 hour.

8

After stopping the car, and particularly after learning that he had no valid driver's license, Deputy Cawcutt had the authority to request that Mr. Maurstad step out of the vehicle. *Payne*, 534 F.3d at 951 (citing *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002)). He then performed a protective frisk to search for weapons, at which point he discovered the Percocet in Mr. Maurstad's pocket.

Mr. Maurstad argues that Deputy Cawcutt had no reasonable suspicion to justify the frisk, but the Court need not address this argument because Mr. Maurstad consented to the search. Deputy Cawcutt testified that he asked Mr. Maurstad if he would allow him to do a pat down for weapons, and Mr. Maurstad verbally agreed. (Tr. 43–44.) Upon finding a hard object in Mr. Maurstad's pocket, Deputy Cawcutt asked for Mr. Maurstad's consent to remove the object, which he once again provided. (*Id.* at 44.) "[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (collecting cases). Although it is the state's burden to demonstrate that consent was voluntary, *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968), Mr. Maurstad has raised no challenges to the deputy's testimony on this point, nor an argument that the consent was not voluntary. Nor has he presented any evidence to suggest as much, and the Court finds none independently. In sum, the Court finds that the protective frisk of Mr. Maurstad was constitutionally valid.

Mr. Maurstad does not challenge the search of the car after the Percocet was discovered, but if he did, the Court would find that search permissible as well. The discovery of unlawfully possessed Percocet combined with the intelligence regarding a drug trafficking load car that matched the description of Mr. Maurstad's vehicle gave rise to probable cause to search the vehicle for contraband. *Murillo-Salgado*, 854 F.3d at 418.

### III.   Recommendation

For the reasons set forth above, the Court concludes that Mr. Maurstad's challenges to the traffic stops and searches in this matter must fail. Accordingly, the Court makes the following recommendation:

1.   Mr. Maurstad's Motion to Suppress Evidence (ECF No. 43) be DENIED.

Date:  August 21, 2019                *s/ Katherine Menendez*
                                       Katherine Menendez
                                       United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.